**Malachy J. SMYTH and Lucy Smyth, Plaintiffs-Appellants,**

v.

**The UPJOHN COMPANY, Defendant-Appellee.**

**No. 87, Docket 75–7143.**

United States Court of Appeals, Second Circuit.

Argued Oct. 21, 1975.

Decided Dec. 2, 1975.

J. Leo Coupe, Utica, N. Y. (Coupe, Coupe & Matt, Utica, N. Y., of counsel), for plaintiffs-appellants.

John E. Hunt, Utica, N. Y. (Kernan & Kernan, Utica, N. Y., of counsel), for defendant-appellee.

Before FRIENDLY, MANSFIELD and TIMBERS, Circuit Judges.

PER CURIAM:

Malachy J. Smyth, M.D., and his wife seek a new trial of their diversity action in the Northern District of New York against The Upjohn Co. for personal injuries suffered by Dr. Smyth, allegedly as the result of Upjohn's antibiotic Lincocin. The complaint alleges that Dr. Smyth developed acute colitis as a result of his taking Lincocin, and that Upjohn was negligent in failing to give adequate warnings of this possible side-effect. A jury trial before Edmund Port, *Judge,* resulted in a verdict for Upjohn. We affirm.

In February 1970, Dr. Smyth developed sinusitis and began treating himself with Lincocin. After administering the drug to himself for two days he developed diarrhea. He continued the medication for two more days. However, after he stopped taking Lincocin, his diarrhea grew progressively worse; he also developed a severe sore throat and lost weight. He then treated his condition with other drugs for six weeks until March 19, when he consulted another physician, who hospitalized him. Dr. Smyth's condition improved after continued treatment in and out of hospitals for what was ultimately diagnosed as colitis.

The only issue raised on this appeal is whether the district court erred in refusing to admit into evidence certain warnings Upjohn published about Lincocin's side-effects. While the warning

read by Dr. Smyth before taking the drug was admitted into evidence, those published after the incident were not;[1] these later warnings, issued from 1970 to 1974, cautioned physicians in progressively severer terms about Lincocin's side-effects.[2] The district court excluded these later warnings, applying the doctrine of "subsequent repairs," which holds that evidence of remedial action taken by a defendant after an accident or other occurrence should not be admitted as proof that the mishap was due to his negligence. Both parties have argued the case on the basis that the evidence was excludable if a New York court would have excluded it.[3] The New York courts have long adhered to the "subsequent repairs" doctrine. See, e. g., *Getty v. Town of Hamlin*, 127 N.Y. 636, 27 N.E. 399 (1891); *Corcoran v. Village of Peekskill*, 108 N.Y. 151, 15 N.E. 309 (1888). The rationale behind the doctrine is that the evidence of remedial action, being based on hindsight, does not tend to show that the defendant had failed to act with reasonable care at an earlier period of time. The evidence, on the other hand, could be highly prejudicial and might discourage a person from making repairs to remedy a potentially dangerous situation.

Appellants, directing their attention principally to the public policy reasoning behind the rule, argued that the New York courts would make an exception to the doctrine in a case involving a mass-produced product such as Lincocin since the producers would in any event make the repairs or remedy the condition. See *Ault v. International Harvester Co.*, 13 Cal.3d 113, 528 P.2d 1148, 117 Cal.Rptr. 812 (1974); Note, *Products Liability and Evidence of Subsequent Repairs* [1972] Duke L.J. 837. Our attention is directed, for instance, to the statutory obligation imposed upon an antibiotic manufacturer by 21 U.S.C. § 357(g)(1) to report regularly to the Food and Drug Administration whatever adverse reactions are suffered through use of an antibiotic. From this it is argued that Upjohn would not be dissuaded from disclosure of such adverse reactions by failure to apply the "subsequent repairs" doctrine.

Thus once again, because we are compelled to accept diversity jurisdiction and the New York courts do not appear to have faced this precise contention, we must speculate as to what principle would be applied by the state courts. See *Feldman v. Allegheny Airlines, Inc.*, 524 F.2d 384 (2d Cir. 1975) (Friendly, *J.*, concurring).. Fortunately, we have little difficulty in this case arriving at the result we believe they would reach, since we find no support in New York case law—or, indeed, in that of most jurisdictions—for the position urged here by appellants. The only exception to the

---

1. Counsel for Smyth actually offered only the first of these later warnings into evidence, although he argued before the trial judge that all of them should be admitted. Since we believe that the admissibility of all the warnings must be decided on the same ground, we treat the case as if all had been offered.

2. The differences between the warning read by Dr. Smyth and the first warning published afterwards are somewhat elusive. The warning he read indicated that Lincocin might cause "persistent diarrhea" and "enterocolitis." The next warning, published later in 1970, stated in addition that the drug might cause "acute colitis." There was expert testimony at trial that enterocolitis, which refers to inflammation of the small and large intestines, would, as a medical term, encompass colitis, an inflammation only of the large intestine. Later warnings expanded on the possible side-effects of Lincocin, until by 1974, the warning included

recommendations for treatment of the side-effects.

3. See F.R.Civ.P. 43(a). The trial took place before the effective date of the Federal Rules of Evidence. No federal statute requires admission of the evidence. Moreover appellant has made no effort to show that the subsequent warnings would be admissible under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity." See *Hope v. Hearst Consolidated Publications*, 294 F.2d 681 (2d Cir. 1961), cert. denied, 368 U.S. 956, 82 S.Ct. 399, 7 L.Ed.2d 388 (1962); *Monarch Ins. Co. v. Spach*, 281 F.2d 401 (5th Cir. 1969); 5 Moore's Federal Practice ¶ 43.04. In light of *Columbia & Puget Sound Railroad Co. v. Hawthorne, infra*, 144 U.S. at 207, 12 S.Ct. 591, 36 L.Ed. 405, such an effort would not have been fruitful.

"subsequent repairs" doctrine recognized by New York courts is the admission of evidence of such repairs when needed to prove a defendant's control over the instrumentality which caused the accident, or over the place where it occurred, see, e. g., *Antonsen v. Bay Ridge Savings Bank,* 292 N.Y. 143, 54 N.E.2d 338 (1944); *Olivia v. Gouze,* 285 App.Div. 762, 140 N.Y.S.2d 438 (1955), *affd.,* 1 N.Y.2d 811, 153 N.Y.S.2d 71, 135 N.E.2d 602 (1956). In making this limited exception the state courts have repeatedly reaffirmed the general validity and applicability of the rule. See, e. g., *Croff v. Kearns,* 29 A.D.2d 703, 286 N.Y.S.2d 119, *affd.,* 22 N.Y.2d 718, 291 N.Y.S.2d 821, 238 N.E.2d 927 (1968).

The arguments advanced by appellants are hardly of sufficient compelling force to persuade us that the New York Court of Appeals would make a general exception for mass-produced products. While the public policy justification for the exclusion of subsequent repair evidence, i. e., discouragement of such repairs, may be less forceful in cases involving such products than in other cases (and this has by no means been established), it still has some weight. Some manufacturers might still decide that the risk of increased liability arising from admission of subsequent repairs or warnings would so outweigh the risks posed by adherence to the status quo that they would opt for the latter. Moreover, appellants ignore the other justifications for the "subsequent repairs" rule, which were summarized by the Supreme Court in *Columbia & Puget Sound Railroad Co. v. Hawthorne,* 144 U.S. 202, 207, 12 S.Ct. 591, 593, 36 L.Ed. 405 (1892):

"[T]he evidence is incompetent, because the taking of such precautions against the future is not to be construed as an admission of responsibility for the past, has no legitimate tendency to prove that the defendant had been negligent before the accident happened, and is calculated to distract the minds of the jury from the real issue, and to create a prejudice against the defendant."

Appellants point to no countervailing probative value in the evidence, which would offset its possible prejudice to the defendant in the present case. It is true that such post-accident warnings have been admitted by some courts to prove the state of a manufacturer's knowledge of the dangers of a product prior to the incident, see *Sterner v. U. S. Plywood-Champion Paper Inc.,* 519 F.2d 1352 (8th Cir. 1975) (Iowa law), or the feasibility of adopting an improved or more adequate warning without extra cost or burden, see *Incollingo v. Ewing,* 444 Pa. 263, 282 A.2d 206 (1971). However, neither of these reasons would call for admission of the evidence in this case. Insofar as the warnings were offered to prove Upjohn's knowledge of Lincocin's dangers, they appear to have been merely cumulative evidence, since appellants introduced a series of earlier detailed reports which Upjohn had received from physicians on reactions to Lincocin. Insofar as the warnings were offered to prove Upjohn's ability to write a stronger warning, they would have been irrelevant, since this was not controverted in the case, see, e. g., Advisory Committee Note, Fed.R.Ev. 407.

In sum, even if we adopt a more relaxed view of the "subsequent repairs" doctrine than the New York cases suggest, and balance the prejudice to the defendant against the probative value of the evidence, we think that excluding the evidence was well within the trial court's "broad discretion over the admissibility of evidence." *Sterner v. U. S. Plywood-Champion Paper Inc., supra,* 519 F.2d at 1354.

We accordingly affirm the decision below.