Luda FOSTER, etc., et al.,
Plaintiffs-Appellants,

v.

FORD MOTOR COMPANY et al.,
Defendants-Appellees.

McLEAN TRUCKING COMPANY,
Plaintiff-Appellant,

v.

FORD MOTOR COMPANY et al.,
Defendants-Appellees.

No. 77–2622.

United States Court of Appeals,
Fifth Circuit.

July 15, 1980.

John E. Collins, Irving, Tex., Richie & Kernaghan, Shreveport, La., for Foster, etc.

E. Glen Johnson, Gerald Reading Powell, Dallas, Tex., for McLean Trucking Co.

Eugene W. Brees, II, David S. Kidder, Dallas, Tex., for Ford Motor Co.

Before CHARLES CLARK, RONEY and HENDERSON, Circuit Judges.

RONEY, Circuit Judge:

This is a products liability case based on diversity jurisdiction arising out of a two truck collision in Dallas County, Texas. The jury found there was no defect in the Ford truck which caused loss of control. Against plaintiffs' claim on appeal that the district court erred in instructing the jury on strict liability only, refusing to instruct on negligence and breach of warranty, and in refusing admission into evidence of a design change made after the manufacture of the truck but before the accident, we affirm.

Thomas D. Foster, a McLean Trucking Co. driver, was killed when his 1975 Ford tractor (truck) and trailer strayed from the eastbound lanes of U.S. Highway 80, into the westbound lanes, and collided with a second truck. Foster's widow and two minor children brought a wrongful death action against Ford Motor Co., the truck's manufacturer, based on strict liability, negligence and breach of warranty, claiming the truck's suspension system was defective. Their action was joined with a claim asserted by McLean Trucking Co., the owner of the truck, for property damage. From a jury verdict for Ford, plaintiffs appeal.

All plaintiffs assert the district court erred in instructing the jury solely on the basis of strict liability and refusing to instruct on the other two theories of recovery, and excluding from evidence a component of the truck's suspension system. In addition, McLean appeals the district court's refusal to permit testimony concerning Ford's failure to respond to McLean's informal requests for information regarding the questioned component.

The factual issues in the case focused on the safety of the Ford truck's left front suspension. Plaintiffs sought to establish that a dowel pin came loose from its press-fitting and fell into a hole in the truck's axle pad, allowing the left front spacer block, caster wedge, spring leafs and U-bolts to shift, resulting in loss of control of the vehicle. The parties stipulated that the dowel pin fell into the axle pad some time before the collision. The point in controversy was whether the vehicle was thereby rendered defective.

Ford argued that the dowel was merely a manufacturing locater pin, intentionally designed without structural strength, and suggested that the mishap occurred because of a variety of factors, including poor weather conditions, an uneven roadway and a braking problem unrelated to the allegedly defective dowel.

Plaintiffs argue the district court erred in refusing to instruct the jury on the issues of negligence and breach of warranty, although an instruction under a strict liability theory was submitted. Texas law applies to the substantive issues in this case. *Erie R. R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The manner of giving jury instructions, however, is a matter of federal, not state law. *McCullough v. Beech Aircraft Corp.*, 587 F.2d 754, 759 (5th Cir. 1979). In examining jury instructions, we consider the charge as a whole. *Harless v. Boyle-Midway Division, American Home Products*, 594 F.2d 1051 (5th Cir. 1979). The jury should be instructed on a legal theory only if the evidence adduced at trial is sufficient to justify such an instruction. *See Liner v. J. B. Talley & Co.*, 618 F.2d 327, 330–31 (5th Cir. 1980); *Lyle v. Bentley*, 406 F.2d 325, 327 (5th Cir. 1969).

■ The heart of plaintiffs' theory was that the spacer block assembly was defectively designed. According to the testimony, the front axle of the 1975 WT9000 Series Ford truck was attached to the suspending leaf springs by two U-shaped bolts on the left and right front sides. The two bolts secured a sandwich of parts which included, among other things, a cast metal spacer block, and a caster wedge. A steel pin, with slanted or chamfered edges, was pressed into the bottom side of the block, and it was this pin which was stipulated to have dropped into the axle pad hole. As a result, according to plaintiffs' theory, the truck's entire front end assembly shifted and caused a loss of control in the vehicle. Plaintiffs argued that had Ford installed a one-inch dowel pin in the spacer block to prevent the caster wedge from slipping out, then vibration and other forces normally encountered in routine heavy truck operations would not have resulted in a shifting of the assembly, and control of the vehicle would have been maintained.

Ford's position was that the dowel pin was merely a vestigial part from the assembly process, and that the pin, which possessed no structural strength on its own, served only as a locater to guide the various components—including the caster wedge, spacer block, leaf springs and securing U-shaped bolts—into position. Thereafter, the pin played no role in the truck's stability, and so long as the U-shaped bolts were periodically tightened according to Ford's recommended procedures, the vehicle would perform according to specifications. Ford recommended, as part of its routine service procedures, checking and possible re-torquing of the U-shaped bolts every 6,000 miles, although it was plaintiff McLean's experience that a formal check was required only at 40,000 mile intervals. The testimony indicated that Foster's truck, which at the time of the accident had been driven 116,-000 miles, had undergone the U-bolt tightening procedure only 4,000 miles prior to the fatal mishap. There was also testimony suggesting that even were plaintiffs' theory of the accident correct, the U-shaped bolts would not loosen after 4,000 miles of operation, considering the vehicle's overall mileage.

Texas has adopted the theory of strict liability, as enunciated in Restatement (Second) of Torts § 402A (1965). *Rourke v. Garza*, 530 S.W.2d 794, 798 (Tex.1975); *Darryl v. Ford Motor Co.*, 440 S.W.2d 630 (Tex. 1969). Strict liability states a theory of recovery distinct from common law negligence. *Turner v. General Motors Corp.*, 584 S.W.2d 844, 854 (Tex.1979) (Campbell, J., concurring); *Signal Oil & Gas Co. v. Universal Oil Products*, 572 S.W.2d 320, 324–26 (Tex.1978). Breach of an implied warranty of merchantability, as pled in this case, states yet a third theory of recovery in Texas. *See* Tex.Bus. & Com.Code Ann. tit. 1, § 2.314 (Vernon 1968); *Nobility Homes, Inc. v. Shivers*, 557 S.W.2d 77 (Tex.1977). Plaintiffs argue the three theories differ according to their focus. For strict liability, they argue, the factfinder scrutinizes the product itself to determine whether it is "unreasonably dangerous." *See Turner v. General Motors Corp.*, 584 S.W.2d 844; Restatement (Second) of Torts § 402A, comment i (1965). In considering a negligence theory the focus, according to plaintiffs, is upon the conduct of the manufacturer or supplier. *Gonzalez v. Caterpillar Tractor Co.*, 571 S.W.2d 867, 871 (Tex.1978). Finally, in the warranty context, the issue is the utility of the product, because the necessary determination is whether the goods are "merchantable." Tex.Bus. & Com.Code Ann. tit. 1, § 2.314(b) (Vernon 1968); *Dallas Heating Co. v. Pardee*, 561 S.W.2d 16, 21 (Tex.Civ.App.—Dallas 1977, *writ ref'd n. r. e.*).

The proof in this case was directed primarily to the issue of whether the product itself was "unreasonably dangerous." Ford consistently asserted that the dowel pin served only as a locater during the assembly of the suspension system. It was Ford's position that the dowel pin could have been fabricated from most any material so long as it was sufficiently strong to withstand the assembly process, and that it could have been removed without affecting the suspension system's stability. Plaintiffs' proof

centered on an attempted showing that the falling dowel pin rendered the suspension system unreasonably dangerous, and that it caused the accident. Ford stipulated that the dowel pin fell into the axle hole prior to the accident but, of course, did not stipulate to plaintiffs' legal conclusion that this occurrence rendered the vehicle unreasonably dangerous. As a result, the jury's attention was focused on the mechanical operation of the truck's suspension system.

On the other hand, Ford's conduct in designing the spacer block assembly was not assessed, especially in light of Ford's concession that a redesigned assembly was feasible at the time Foster's truck was involved in the accident. Accordingly, a negligence instruction was not justified here, based upon the evidence adduced at trial.

■ With respect to whether plaintiffs were entitled to an instruction on breach of warranty, we note the elements of proof for that theory and strict liability are substantially similar. The Supreme Court of Texas has described the theoretical basis for strict liability as follows:

> [A] seller of a product in a defective condition unreasonably dangerous to the user is subject to liability for physical harm caused to the user if the seller is engaged in the business of selling such a product and it is expected to and does reach the user without substantial change in the condition in which it is sold. This rule applies even though the seller has exercised care in the preparation and sale of his product and even though the user has not purchased the product or entered into any contractual arrangement with the seller. . . .

*Rourke v. Garza*, 530 S.W.2d at 798 (citations omitted). The Texas Uniform Commercial Code defines the implied warranty of merchantability as follows:

> (a) Unless excluded or modified (Section 2.316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.
>
> . . .
>
> (b) Goods to be merchantable must be at least such as

> (1) pass without objection in the trade under the contract description; and
>
> (2) in the case of fungible goods, are of fair average quality within the description; and
>
> (3) are fit for the ordinary purposes for which such goods are used; and
>
> (4) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
>
> (5) are adequately contained, packaged, and labeled as the agreement may require; and
>
> (6) conform to the promises or affirmations of fact made on the container or label if any.

.    .    .    .    .

Tex.Bus. & Com.Code Ann. tit. 1, § 2.314 (Vernon 1968). The negative implication of the warranty requirement that goods be "fit for the ordinary purposes for which such goods are used" is that the goods not be unreasonably dangerous. In *Borel v. Fibreboard Paper Products Corp.*, 493 F.2d 1076 (5th Cir. 1973), *cert. denied*, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974), a case arising under Texas law, the district court used breach of warranty language in some parts of the jury charge on strict liability. This Court held the district court had accurately instructed the jury on the strict liability issue, and

> [w]ith respect to breach of implied warranty, the court specifically equated "unfitness" or "unmerchantability" with the "unreasonably dangerous" standard of strict liability in tort. Viewing the charge as a whole, we think that the jury fully understood that liability could be imposed only if the product was unreasonably dangerous.

*Borel v. Fibreboard Paper Products Corp.*, 493 F.2d at 1091 (footnote omitted). Viewed in this fashion, the difference between the two theories "is largely one of terminology." *Davis v. Wyeth Laboratories, Inc.*, 399 F.2d 121, 126 (9th Cir. 1968) (footnote omitted). *See also Angle v. Sky*

*Chef, Inc.,* 535 F.2d 492, 495 (9th Cir. 1976); *Basko v. Sterling Drug, Inc.,* 416 F.2d 417, 427 (2d Cir. 1969).

A distinction between the two modes of recovery in Texas may arise in connection with the type of loss that can be compensated. *See* Winship, *Commercial Transactions—Annual Survey of Texas Law,* 33 Sw.L.J. 203, 208–10 (1979). *See also Chestnut v. Ford Motor Co.,* 445 F.2d 967, 969 (4th Cir. 1971). An accident that damages both the purchased goods and other property, or causes personal injury, as in the present case, may give rise to a right of recovery under both warranty and strict liability under section 402A. *See Signal Oil & Gas Co. v. Universal Oil Products,* 572 S.W.2d 320.

The jury's finding that no defect existed in the Ford truck, however, precluded recovery for any loss, under either theory. The jury answered one interrogatory as follows:

> In considering the question of unreasonable danger, you must realize that many products have both utility and danger. You must weigh the utility of the product against the risk of harm created. A product is unreasonably dangerous if it presents to a user of such product or bystander a threat of injury such that:
>
> (1) A prudent manufacturer, who is aware of the risk of harm, would not place it in the channels of commerce in that condition, or
>
> (2) In such condition it would not meet the reasonable expectations of the ordinary consumer as to safety.
>
> Answer: "It was" or "It was not" defective.
>
> Answer: <u>It was not</u>
>
> (Burden of proof on plaintiffs)

Whether certain alleged losses could have been recovered solely under the breach of warranty claim, and not under the strict liability theory, becomes of no consequence. *See Nobility Homes, Inc. v. Shivers,* 557 S.W.2d at 79–83; *Mid Continent Aircraft Corp. v. Curry County Spraying Service, Inc.,* 572 S.W.2d 308, 310–13 (Tex.1978).

We find no reversible error in the district court's refusal to instruct the jury on the questions of negligence and breach of warranty.

Some time after the manufacture and sale of the Ford truck involved in the collision, but before the collision itself, Ford changed the spacer block assembly for 1976 and 1977 model trucks, casting it as one unit. The spacer block and spacer block dowel used in 1975 models had been comprised of a steel pin pressed into a soft, cast block. Plaintiffs sought to introduce a model of the redesigned spacer block for the purpose of showing that had the truck been equipped with the alternate design, the collision would not have occurred. Specifically, plaintiffs intended to show by means of the model that a spacer block could have been fabricated as an integral unit at the time of the collision. Ford objected to admission of the spacer block itself on the basis of Fed.R.Evid. 407, which provides:

> When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

Plaintiffs contested the exclusion of the spacer block, arguing that rule 407 is applicable only to cases involving negligence or culpable conduct, and does not bar evidence of subsequent remedial conduct where, as in the present case, strict liability is at issue. *Compare Farner v. Paccar, Inc.,* 562 F.2d 518, 528 (8th Cir. 1977), *and Robbins v. Farmers Union Grain Terminal Association,* 552 F.2d 788, 793 (8th Cir. 1977), *with Roy v. Star Chopper Co.,* 584 F.2d 1124, 1134 (1st Cir. 1978). *See generally* 2 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 407[02] at 407–10 (Supp.1978).

We need not decide whether rule 407 applies, however, and more particularly whether "after the event" in the rule refers to the manufacture of the product or the accident involving the product. The district court thought that in light of Ford's concession that the altered design was practical, actual physical evidence would have been irrelevant. Fed.R.Evid. 401. *See Smyth v. Upjohn Co.*, 529 F.2d 803, 805 (2d Cir. 1975). Evidentiary rulings must be affirmed unless they affect a substantial right of the complaining party. Fed.R.Evid. 103(a); Fed.R.Civ.P. 61; *Whitehurst v. Wright*, 592 F.2d 834, 840 (5th Cir. 1979). The sole purpose of offering this evidence was to show that an alternate design was feasible. Ford, through the testimony of its engineer, conceded that the design change was technologically feasible and economically practicable. At best, the physical evidence would have been cumulative, at worst, unfair, misleading or confusing. Fed.R.Evid. 403. Since the jury was presented with a thorough explanation of the component's role in maintaining the truck's stability from both sides of the dispute, and was told that a redesigned and safe spacer block could have been included in the vehicle at the time of the accident, as plaintiffs contended, refusal to admit the spacer block itself did not affect any substantial rights. Since plaintiffs' counsel specified the precise purpose for which the redesigned spacer block was offered, plaintiffs cannot claim on appeal that the redesigned spacer block might have been admissible for some other purpose. Fed.R.Evid. 103(a)(2); *see* Fed.R.Civ.P. 46; C. Wright & K. Graham, Federal Practice & Procedure: Evidence § 5040 at 213 (1977).

The final issue is whether the district court erred in excluding the deposition testimony of a Ford dealer's employee, with respect to Ford's alleged lack of response to inquiries, and damaging statements concerning the spacer block. Plaintiff McLean argues the Ford agent's failure to respond amounted to an "admission by silence," since it would have been natural under the circumstances for Ford to deny the assertions raised in the inquiries, had the assertions been untrue. *See* Fed.R.Evid.

801(d)(2)(B); *Megarry Brothers, Inc. v. United States ex rel. Midwestern Electric Construction, Inc.*, 404 F.2d 479, 487–89 (8th Cir. 1968); IV J. Wigmore, Evidence § 1071 (J. Chadbourn rev. 1972). We pretermit consideration of this issue because a review of the record reveals the deposition testimony was never formally offered into evidence. The testimony was therefore justifiably excluded. Fed.R.Evid. 103(a)(2); *Mills v. Levy*, 537 F.2d 1331, 1333 (5th Cir. 1976).

AFFIRMED.