**Emeilia CANN and Charles Cann,**
**Plaintiffs-Appellants,**

v.

**FORD MOTOR COMPANY,**
**Defendant-Appellee.**

**No. 837, Docket 80–7603.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 19, 1981.

Decided Aug. 19, 1981.

---

Kevin J. Sullivan, Buffalo, N. Y. (Paul W. Beltz, Buffalo, N. Y., Charles Herring, Jr., Gochman & Weir, San Antonio, Tex., of counsel), for plaintiffs-appellants.

George M. Gibson, Buffalo, N. Y. (Brian P. Crosby, Damon, Morey, Sawyer & Moot, Buffalo, N: Y., of counsel), for defendant-appellee.

Before VAN GRAAFEILAND and MESKILL, Circuit Judges, and STEWART,* District Judge.

MESKILL, Circuit Judge:

In this diversity action, plaintiffs appeal from a judgment entered upon a special verdict for the defendant in the United States District Court for the Western District of New York, Burke, J., dismissing their causes of action in negligence, breach of warranty, and strict products liability.

The jury heard evidence that on November 15, 1976, Charles Cann, accompanied by his elderly wife, Emeilia, drove a 1976 Mercury Marquis automobile, a Ford product, to a service station in Penn Yan, New York. Upon arriving, Mr. Cann shifted into what he thought was "park," left his engine running, set his parking brake, and got out of the car. When he slammed the door the car shifted into reverse and began to move. Mrs. Cann, who did not know how to drive, fell trying to get out of the car, and was struck and seriously injured by it.

Plaintiffs argued that Ford was liable for the injuries they sustained, on the grounds of negligence, breach of warranty, and strict products liability. They introduced evidence that the transmission could appear to be in "park" when in reality it was not, and that when the transmission was "hung up" in this fashion it could slip into reverse.[1] Plaintiffs' expert witness suggested various feasible design changes to reduce or eliminate this problem. Plaintiffs also introduced evidence that Ford failed to warn consumers of the dangers to which the allegedly defective design exposed them and failed to advise them of the measures which drivers could take to prevent an accident. Their expert witness testified that "a positive and clear warning" should have been prominently posted on the visor of each new car or at least included in the Owner's Manual provided by the manufacturer. Plaintiffs further argued that although Ford had been aware of the problem since at least 1971, it had not taken adequate remedial measures. Plaintiffs, however, were not allowed to present evidence of remedial measures taken by Ford subsequent to the accident.

---

* Honorable Charles E. Stewart, Jr., United States District Judge for the Southern District of New York, sitting by designation.

1. Plaintiffs also argued that the design of the parking brake was defective. The parking brake was designed to release itself automatically when the car was put into reverse. Plaintiffs conceded that this design feature was not dangerous in some cars, but they argued that it was dangerous to incorporate this feature into a car which might unexpectedly slip into reverse.

Ford offered expert testimony that its gearshift conformed to the industry's state of the art and that there were no significant differences between Ford's gearshifts and those in other contemporary cars. Ford blamed the accident on Mr. Cann's haste, arguing that he failed to position the gearshift properly. Furthermore, Ford stressed that the accident would not have happened had the Canns taken advantage of built-in safety features in the Mercury, like the warning buzzer that sounds when the driver's door is opened while the key is left in the ignition. Finally, Ford argued that Mrs. Cann would not have fallen out of the car had she fastened her seat belt.

The plaintiffs abandoned their breach of warranty claims at trial, and therefore the case was submitted to the jury only under the theories of negligence and strict products liability. After some prodding by the court, counsel filed requests to charge; the court ruled on the requests and these rulings are not challenged on this appeal. The court *sua sponte* submitted to the jury two written questions on liability and two blanks to record the damages suffered individually by Emeilia and Charles Cann. The jury was instructed to answer the questions "yes" or "no," but to determine damages only if they answered "yes" to at least one of the two questions respecting liability. These questions read:

> *First Cause of Action*: Have the plaintiffs proved by a fair preponderance of the evidence that the accident of November 15, 1976 was caused by the negligence of the defendant Ford Motor Co. in careless manufacture, design, fabrication, maintenance, repair, upkeep and failure to recall the 1976 Mercury automobile?

> *Third Cause of Action*: Have the plaintiffs proved by a fair preponderance of the evidence that the accident of November 15, 1976 was caused by the fact that the 1976 Mercury, its parts and apparatus, were not fit for the purpose for which they were intended; that the said auto-

mobile was unreasonably dangerous for normal and ordinary use; [and] [2] that the defendant Ford Motor Co. failed to recall said vehicles and therefore that the defendant Ford Motor Co. is liable in tort to the plaintiffs[?]

The record does not reveal a request for a special verdict nor does it indicate the source of the questions. They were evidently not disclosed to counsel before the court read them to the jury.

Following the reading of the charge and the submission of the special verdict questions to the jury, the court asked counsel if they had any exceptions or additional requests. Counsel for appellants asked that the exceptions be made outside the presence of the jury in accordance with Rule 51, Fed.R.Civ.P. Judge Burke insisted that any exceptions be taken then and there. Plaintiffs' counsel made one exception not raised in this appeal. He declined to make further exception until after the jury retired when he promptly excepted "to the court's charge and also to the issues submitted to the jury." He proceeded to detail objections to the inclusion in the first question of the conjunction "and" after the alternative bases for proving negligence were listed, as requiring the plaintiff to prove all of the recited theories in order to recover. He further objected to the inclusion in the second question of the phrase "fit for the purpose for which they were intended." And, finally, he objected that the conjunction "and" in the second question required the plaintiffs to prove "every one of those alternative theories instead of allowing the plaintiffs to prevail upon the proof of negligent design which is our main contention in this case."

The jury answered both questions in the negative and the court entered judgment dismissing the complaint. On this appeal the Canns claim that the court erred in (1) its refusal to permit objections to the charge out of the hearing of the jury, (2) its phrasing of the special verdict questions,

---

**2.** When the trial judge read the questions to the jury, he inserted the conjunction "and" at this point.

and (3) its exclusion of evidence of subsequent remedial measures as to the product liability claim.

## DISCUSSION

### A. Court's Failure to Permit Objections Out of Hearing of Jury

 Rule 49(a) Fed.R.Civ.P. (Special Verdicts and Interrogatories) and Rule 51 (Instructions to Jury: Objections) require that objections under these provisions be made before the jury retires. Rule 51 provides that "[n]o party may assign as error the giving or failure to give an instruction unless he objects thereto before the jury retires." Rule 49(a) provides that "[i]f . . . the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury." Rule 51 also requires that "[o]pportunity . . . be given to make the objection out of the hearing of the jury." Rule 49(a) contains no such language. It is well settled in this Circuit that, when the trial court errs by refusing to permit a party's objections to a charge to be made out of the hearing of the jury, the party's failure to object before the jury retires is excused and his objections may be raised on appeal. *Bentley v. Stromberg-Carlson Corp.*, 638 F.2d 9, 12 (2d Cir. 1981).

 Even though Rule 49(a) does not contain language similar to that of Rule 51 requiring that the trial court hear objections out of the hearing of the jury, logic requires similar treatment where, as here, the special verdict questions were included in the charge. In cases such as this, there is no reason to give parties less protection when they object to the phrasing of a special verdict question than when they object to the phrasing of general instructions. Therefore, the failure to permit the objections to the special questions out of the hearing of the jury was an abuse of the trial court's discretion and we will consider these objections preserved for appeal.

 The formulation of special verdict questions rests in the discretion of the trial judge, *Tights, Inc. v. Acme-McCrary Corp.*, 541 F.2d 1047, 1060 (4th Cir.), *cert. denied*, 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976); *McDonnell v. Timmerman*, 269 F.2d 54, 58 (8th Cir. 1959); *Norfolk Southern Ry. Co. v. Davis Frozen Foods, Inc.*, 195 F.2d 662, 666 (4th Cir. 1952), and therefore our review is confined to inquiring whether the trial court's submission of the issues in the form of these questions constituted an abuse of discretion. *Tights, Inc. v. Acme-McCrary Corp., supra*, 541 F.2d at 1060; *see Abernathy v. Southern Pacific Co.*, 426 F.2d 512, 514 (5th Cir. 1970). We will reverse a judgment entered upon answers to questions which mislead and confuse the jury or which inaccurately frame the issues to be resolved by the jury. *See Dougherty v. Continental Oil Co.*, 579 F.2d 954, 958 (5th Cir. 1978); *Dreiling v. General Electric Co.*, 511 F.2d 768, 774 (5th Cir. 1975); *Stemler v. Burke*, 344 F.2d 393, 397 (6th Cir. 1965); *Scott v. Isbrandtsen Co.*, 327 F.2d 113, 119 (4th Cir. 1964).

 Appellants complain that the special questions were phrased in the conjunctive rather than the disjunctive—that the questions should have read "or" rather than "and." Appellants claim that they should have prevailed on the negligence count upon their proof that the accident was caused by the negligent design of the Mercury. They assert that the conjunctive form of the question prevented the jury from returning a verdict in their favor on that basis alone. Thus, they contend that before the jury could answer the negligence question in the affirmative, they also had to find that Ford was negligent in its manufacture, fabrication, maintenance, repair, upkeep, and failure to recall the Mercury. We conclude that the submitted question created an unfair obstacle to the jury's returning an answer favorable to the plaintiffs. The second question addressed to the strict liability count is equally flawed because, in the form read to the jury, it was also phrased in the conjunctive rather than the disjunctive.

Appellees respond that the jury was not misled by the phrasing of the questions

because they knew that plaintiffs' primary contention at trial had been that the Mercury was negligently or defectively designed. However, just as we must assume that the jury follows the law as it is explained to them by the judge, *Fairmount Glass Works v. Cub Fork Coal Co.*, 287 U.S. 474, 485, 53 S.Ct. 252, 255, 77 L.Ed. 511 (1933); *Lifetime Siding, Inc. v. United States*, 359 F.2d 657, 661 (2d Cir.), *cert. denied*, 385 U.S. 921, 87 S.Ct. 233, 17 L.Ed.2d 144 (1966), we cannot assume that the jury ignored the literal, grammatical meaning of the written questions posed by that same judge. Accordingly, the judgment dismissing the complaint must be reversed and the case remanded for a new trial solely on the negligence and strict products liability claims.

■ In addition to the reversible error discussed above, the special verdict contained other deficiencies which should be remedied on retrial. The first question requested the jury to determine whether Ford had acted negligently in a number of matters, some of which were never raised at trial. For example, our review of the record does not reveal any evidence of negligent repair or upkeep of the Mercury by Ford and, therefore, these matters should not have been included in the question. In the second question, the court should not have included the phrase "fit for the purpose for which they were intended" in a question respecting strict products liability. That phrase relates to the implied warranty action, *see* Note, *Analyzing "Defect" in New York Products Liability Law: The Proof Is in the Product*, 29 Syracuse L.Rev. 1217, 1231–32 (1978), contained in the complaint but abandoned at trial. Finally, the special verdict did not contain a separate inquiry into the existence and percentage of any comparative negligence on the part of Emeilia or Charles Cann. Such an inquiry would help focus the jury's deliberations on a major issue in this case—the alleged contributory negligence of the plaintiffs.

**B.** *Evidentiary Rulings*

■ Appellants assign as error the court's refusal to permit them to introduce proof that in 1980 Ford modified the design of its transmission and that in 1978 Ford changed its Owner's Manual to specifically instruct drivers to turn off the ignition before leaving the car. We find no merit in this claim.

■ The admissibility of the post-accident warning is controlled by *Lindsay v. Ortho Pharmaceutical Corp.*, 637 F.2d 87, 94 (2d Cir. 1980), which held that when evidence of post-accident warnings is offered "the court must consider under Rule 403 whether its probative value is outweighed by the danger of unfair prejudice and confusion." When evidence of post-accident design changes is offered, Rule 403 again requires the court to consider whether the probative value of the evidence is outweighed by the danger of unfair prejudice and confusion. In addition to Rule 403's general safeguard against admitting unfairly prejudicial evidence, Rule 407 speaks even more directly to the admissibility of evidence of post-accident design changes. Rule 407 [3] excludes evidence of post-remedial measures "to prove negligence or culpable conduct" unless the evidence is offered "for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment." Appellants argue that Rule 407 is inapplicable in strict products liability actions, because such actions do not involve "negligence or culpable conduct." Courts have split over the proper resolution of this issue. *Compare Farner v. Paccar, Inc.*, 562 F.2d 518 (8th Cir. 1977), *and Robbins v. Farmer's Union Grain Terminal Ass'n*, 552 F.2d 788 (8th Cir. 1977) *with Oberst v. International Harvester Co.*, 640 F.2d 863 (7th Cir. 1980) *and Werner v. Upjohn Co.*, 628 F.2d 848, 857 (4th Cir. 1980), *cert. denied*, 449 U.S. 1080, 101 S.Ct. 862, 66

**3.** Fed.R.Evid. 407 provides:

When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

L.Ed.2d 804 (1981), but for the reasons set forth below we refuse to so limit the scope of Rule 407.

The failure of Rule 407 to refer explicitly to actions in strict liability does not prevent its application to such actions. When Congress enacted the Federal Rules of Evidence, it left many gaps and omissions in the rules in the expectation that common-law principles would be applied to fill them. *See Werner v. Upjohn Co., supra*, 628 F.2d at 856; K. Redden & S. Saltzburg, *Federal Rules of Evidence Manual* 411–13 (1975). The application of those principles convinces us that although negligence and strict products liability causes of action are distinguishable, no distinction between the two justifies the admission of evidence of subsequent remedial measures in strict products liability actions.

The rule excluding evidence of subsequent remedial repairs represents a common sense recognition that people are loath to take actions which increase the risk of losing a lawsuit. Rule 407 is prompted by the fear that people will be less likely to take subsequent remedial measures if evidence of their repairs or improvements may be used against them in lawsuits arising out of prior accidents. *Werner v. Upjohn Co., supra*, 628 F.2d at 857. Appellants point out that a negligence action places in issue whether the defendant's conduct was reasonable while a strict liability action involves whether the product was defective; they note that the jury focuses on the *defendant* in a negligence action, but solely upon the *product* in a strict liability action. However, the defendant must pay the judgment in both situations, regardless of where the jury's attention focused when they found against him. Since the policy underlying Rule 407 not to discourage persons from taking remedial measures is relevant to *defendants* sued under either theory, we do not see the significance of the distinction. A potential defendant must be equally concerned regardless of the theoretical rubric under which this highly prejudicial, *Smyth v. Upjohn Co.*, 529 F.2d 803, 804 (2d

Cir. 1975), and extremely damaging evidence, *Bauman v. Volkswagenwerk Aktiengesellschaf*, 621 F.2d 230, 233 (6th Cir. 1980); *see also Caprara v. Chrysler Corp.*, 52 N.Y.2d 114, 134–35, 436 N.Y.S.2d 251, 262, 417 N.E.2d 545, 555–56 (1981) (Jasen, dissenting), is admitted. Furthermore, as happened here, plaintiffs frequently bring actions sounding in both negligence and strict liability. In sum, we hold that Rule 407 applies to strict products liability actions.[4]

The judgment is vacated and the case remanded for a new trial. The parties shall bear their own costs.

---

**4.** We leave to the trial judge the determination of whether the evidence may be admitted at

retrial under one of the exceptions to Rule 407.