779 F.2d 836
 19 Fed. R. Evid. Serv. 583, Prod.Liab.Rep.(CCH)P 10,904
Sherwin W. FISH and Leona B. Fish, Plaintiffs-Appellees,
Cross-Appellants,
v.
GEORGIA-PACIFIC CORPORATION, Diamond International
Corporation and Owens-Corning Fiberglass
Corporation, Defendants,
Georgia-Pacific Corporation and Diamond International
Corporation, Defendants-Appellants, Cross-Appellees.
 Nos. 247, 294, Dockets 85-7395, 85-7397.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 4, 1985.
Decided Dec. 13, 1985.
 
 Richard F. Sullivan, Rutland, Vt. (Sullivan and McClallen, Rutland, Vt., Arthur A. Mitiguy, Law Clerk, of counsel), for plaintiffs-appellees, cross-appellants.
 Allan R. Keyes, Rutland, Vt. (Ryan Smith & Carbine, Ltd., Rutland, Vt., of counsel), for defendants-appellants, cross-appellees.
 Before FEINBERG, Chief Judge, and LUMBARD and WINTER, Circuit Judges.
 LUMBARD, Circuit Judge:
 
 
 1
 Plaintiffs, Sherwin and Leona Fish, brought this diversity suit in the District Court for Vermont on a theory of strict products liability for defendants' failure to warn plaintiffs of alleged hazardous effects of "particleboard floor underlayment" used to build their home. The jury awarded plaintiffs $85,000 for property damage and $10,000 for personal injuries to Sherwin Fish.
 
 
 2
 Defendants Georgia-Pacific Corp. and Diamond International Corp.[1] appeal from the verdict and Judge Holden's denial of their motion for a judgment n.o.v. or a new trial on plaintiffs' property damage claim. Plaintiffs cross-appeal Judge Holden's denial of their motion for an additur or a new trial on the issue of damages for Sherwin Fish's personal injuries.
 
 
 3
 Because of evidentiary errors in the proceedings below, we reverse and remand for a new trial.
 
 
 4
 Georgia-Pacific manufactures and Diamond International retails particleboard floor underlayment--a product made by binding together wood chips with an adhesive made from formaldehyde resins. Particleboard is used extensively in home construction, in this case as flooring under wall-to-wall carpet. The product emits low levels of formaldehyde vapors which can in some instances cause health problems.
 
 
 5
 Plaintiffs commenced this action on February 12, 1981. The proof at trial revealed that in 1977 and 1978, plaintiffs purchased approximately 2000 square feet of particleboard for use in the construction of their Wallingford, Vermont home. They lived in their home from September, 1978 until March, 1980 when, complaining of respiratory difficulties and eye, nose and throat irritation, they moved out. Sherwin Fish suffered aggravation of pulmonary afflictions that were initially due to cigarette smoking. Leona Fish, who does not have a similar medical history, suffered no aggravation of pre-existing injuries, but she did complain of discomfort. Both plaintiffs claimed that they had become permanently sensitized to formaldehyde, that they could no longer live in the house, and that the house was unsaleable.
 
 
 6
 The plaintiffs alleged that the defendants knew or should have known, prior to 1977, that the particleboard was dangerously defective because of the formaldehyde emissions and that, therefore, defendants had a duty to place a warning on their product. Plaintiffs sued for their personal injuries, including past and anticipated medical expenses and pain and suffering, and for property damage to their home.
 
 
 7
 The defendants denied that the particleboard was dangerously defective and, in particular, attempted to show that the ill effects complained of by Sherwin Fish were attributable solely to his smoking habit. They also argued that, even if the particleboard could in rare instances cause injury, they had no duty in 1977 to warn consumers because the particleboard posed no risk of serious injury to a substantial portion of the population.
 
 
 8
 Plaintiffs' medical experts testified that formaldehyde emissions from particleboard could cause adverse health effects, especially for people with a history of lung trouble. The key issue in the case was whether Georgia-Pacific knew or should have known of this in 1977 when it manufactured the particleboard purchased by Sherwin and Leona Fish and, if so, whether Georgia-Pacific was under a duty to warn of the potential dangers.
 
 
 9
 Plaintiffs sought to introduce evidence that Georgia-Pacific had issued warnings in 1983 about formaldehyde emissions from its products. Defendants countered that the warnings represented subsequent remedial measures and that evidence of such measures was inadmissible under Federal Rules of Evidence 407 and 403. Furthermore, the defendants conceded that it was feasible to provide a warning in 1977, and therefore feasibility was not a contested issue. Despite this concession of the defendants, the district court permitted plaintiffs' counsel to read the date and the text of the 1983 warning into evidence. The court ruled that the 1983 warning was pertinent to the issue of the feasibility of providing a warning in 1977. Later, in its charge, the court cautioned the jury that it should not consider the subsequent warning as an admission by Georgia-Pacific that it should have used the warning earlier. Despite this, the court instructed the jury that the 1983 warning was relevant to the question of what Georgia-Pacific knew or should have known about their products in 1977.
 
 
 10
 The court explained to the jury that, as to Sherwin Fish's claim for personal injuries, the issue was whether the defendants were liable for failure to warn consumers with previous lung troubles of the dangers of formaldehyde emissions from particleboard. As to Leona Fish's personal injury claim, the judge charged that the jury could find liability only if the particleboard, sold without a warning, was dangerously defective to the ordinary consumer with no history of lung trouble. Finally, with respect to the property damage claim, the judge charged that the plaintiffs were entitled to recover if, among other things, dangerous defects in the particleboard rendered the home unsaleable to other persons. The judge advised the jury that the measure of property damage, if any, was the difference in market value of the house from the time that the plaintiffs entered in 1978 to the time they vacated it in 1980.
 
 
 11
 In its answers to interrogatories the jury found that the particleboard was dangerously defective to Sherwin Fish. The jury concluded that the defendants were liable for failure to warn him of the potential aggravation of his injuries and awarded him $10,000. Regarding Leona Fish's personal injury claim, the jury found that the particleboard was not dangerously defective as to her. Finally, the jury awarded the plaintiffs $85,000 for damage to their home. The court entered a judgment on the verdict against Georgia-Pacific and Diamond International totaling $95,000.
 
 
 12
 Plaintiffs moved for an additur or, in the alternative, for a new trial on the issue of damages for Sherwin Fish's injuries, claiming that the $10,000 award was inadequate as a matter of law. Defendants moved for a judgment n.o.v., or, in the alternative, for a new trial on the issues of their liability for Sherwin Fish's injuries and their liability for property damage to the Fish home. Defendants maintained that the jury's finding of liability was based on inadmissible evidence and that the award on the property damage claim was contrary to the evidence, the charge and the jury's answers to interrogatories regarding Leona Fish's personal injury claim.
 
 
 13
 Both sides appeal from the denial of these motions. The parties have essentially restated their objections to the jury verdict, except that defendants, for strategic reasons, no longer contest the judgment for Sherwin Fish's personal injuries. However in view of errors in the admission of evidence and in the instructions to the jury, we reverse and remand for a new trial on both Sherwin Fish's personal injury claim and Sherwin and Leona Fish's property damage claim.
 
 Evidentiary Errors
 
 14
 It was error to permit the plaintiffs to read to the jury Georgia-Pacific's 1983 warning to its customers about formaldehyde emissions from particleboard. Under FRE 407, evidence of measures taken subsequent to an event which, if taken previously, would have made the event less likely to occur is inadmissible to prove negligence or culpable conduct in connection with the event. We have held that FRE 407 applies in a strict products liability action to bar evidence of a remedial design change in a product where the change was made subsequent to the product's injuring the plaintiff and the evidence is offered on the issue of the manufacturer's culpable conduct. See Cann v. Ford Motor Co., 658 F.2d 54, 60 (2d Cir.1981), cert. denied, 456 U.S. 960, 102 S.Ct. 2036, 72 L.Ed.2d 484 (1982). We hold that Georgia-Pacific's 1983 warning represents a remedial measure taken subsequent to the plaintiffs' alleged injuries and that FRE 407 bars evidence of the warning on the issue of whether Georgia-Pacific "should have" promulgated the warning in 1977. Accord Werner v. Upjohn Co., 628 F.2d 848, 853 (4th Cir.1980), cert. denied, 449 U.S. 1080, 101 S.Ct. 862, 66 L.Ed.2d 804 (1981).
 
 
 15
 Nor was the evidence of the warning admissible on the limited issue of the "feasibility" of providing a warning in 1977. Georgia-Pacific stated that it was willing to admit the feasibility of providing a warning in 1977; it simply contended that it did not have a legal duty to do so. Because feasibility was not a contested issue, there was no reason to admit the evidence of the warning and it should have been excluded.
 
 
 16
 This error was not cured by the court's instruction that the jury should not regard the 1983 warning as an admission of liability on the part of Georgia-Pacific. The court confused matters soon thereafter when it stated that the evidence of the 1983 warning was allowed "to show whether or not Georgia-Pacific ... knew or should have known prior to 1977 that the warning should have been advanced ... earlier than the time it appeared."
 
 
 17
 In any event, the evidence of the 1983 warning should have been excluded under FRE 403 as "its probative value [was] outweighed by the danger of unfair prejudice and confusion." Lindsay v. Ortho Pharmaceutical Corp., 637 F.2d 87, 94 (2d Cir.1980); see also Smyth v. Upjohn Co., 529 F.2d 803, 804 (2d Cir.1975).
 
 
 18
 While the error with regard to the 1983 warning was sufficient to require a new trial, we note that there were other evidentiary errors which were highly prejudicial to the defense. The district court inadvertently permitted plaintiffs' counsel to read from a letter that had been excluded from evidence. The letter, written in 1969 on the letterhead of the Hardwood Plywood Manufacturers Association, discussed the industry's growing awareness of health problems connected with formaldehyde emissions from wood products. When it was discovered that the court clerk's tally had erroneously listed the letter as received in evidence, the court ordered the jury to disregard the letter.
 
 
 19
 The court also instructed the jury that it could consider, on the question of defendants' duty to warn, that other manufacturers of particleboard had posted warnings on their products prior to 1977. In fact, there had been no evidence of such an industry practice. When defendants objected after the charge, the court realized its mistake and attempted to cure the error by instructing the jury that there was no evidence that other particleboard manufacturers issued warnings prior to 1977.
 
 
 20
 We believe that the erroneous charge and the admission of evidence which should have been excluded damaged the defense beyond the possibility of repair by curative instructions. The cumulative effect of these errors tainted the trial on the critical issue of defendants' duty to warn of formaldehyde emissions from particleboard.
 
 Property Damage Claim
 
 21
 With regard to this claim, we note that the jury instructions were overly restrictive in requiring plaintiffs to prove that the house was "unsaleable" in order to recover damages. The jury returned a verdict for plaintiffs, ostensibly ignoring this instruction, for, as defendants point out, there was no evidence that the house was unsaleable. It may well have been saleable to persons who have no pulmonary trouble.
 
 
 22
 Unsaleability need not be a condition of recovery. If defendants had a duty to warn in 1977, and if they failed in this duty, then the measure of damages on the property damage claim would be the cost of repairing the house or, if this is not possible, the loss of value of the property because of the presence of particleboard in the home. See Bean v. Sears, Roebuck & Co., 129 Vt. 278, 282, 276 A.2d 613, 616 (1971).
 
 
 23
 Reversed and remanded for a new trial on both Sherwin Fish's claim for personal injuries and Sherwin and Leona Fish's property damage claim.
 
 
 
 [1]
 Owens-Corning Fiberglass Corp. was also a defendant. The jury found that Owens-Corning was not liable to Sherwin and Leona on their personal injury claims for exposure to fiberglass insulation. The Fishes have not contested this finding and Owens-Corning is not a party to this appeal