In re JOINT EASTERN DISTRICT AND
SOUTHERN DISTRICT ASBESTOS
LITIGATION.

Anne McPADDEN, individually and as Ex-
ecutrix of the Estate of Martin McPad-
den (deceased), Plaintiff–Appellee,

v.

ARMSTRONG WORLD INDUSTRIES,
INC.; Fibreboard Corporation; Owens–
Corning Fiberglass Corporation; Celo-
tex Corporation; Eagle–Picher Indus-
tries, Incorporated; GAF Corporation;
Pittsburgh Corning Corporation; H.K.
Porter Company, Inc.; Owens–Illinois,
Incorporated; A.P. Green Industries
Inc.; U.S. Mineral Products Co.; A.C.
and S. Inc.; United States Gypsum Co.;
National Gypsum Company; Babcock &
Wilcox Company; Combustion Engi-
neering, Inc.; Rockwool Manufacturing
Co., Defendants,

v.

JOHN CRANE–HOUDAILLE INC.,
Defendant–Appellant.

No. 980, Docket 92–9031.

United States Court of Appeals,
Second Circuit.

Argued Jan. 21, 1993.

Decided May 25, 1993.

Roger P. McTiernan, Sr., New York City
(Michael F. Close, Suzanne M. Halbardier,
Barry, McTiernan & Moore, of counsel), for
defendant-appellant.

Steven J. Phillips, New York City (Alani Golanski, Moshe Maimon, Levy Phillips & Konigsberg), for plaintiff-appellee.

Before: PIERCE, WALKER and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge:

John Crane–Houdaille, Inc. ("Crane") appeals from a personal injury and wrongful death judgment, jointly entered on July 31, 1992 by the United States District Courts for the Eastern and Southern Districts of New York (Charles P. Sifton, *Judge* ), following a consolidated asbestos jury trial. *In re Joint E. & S. Dists. Asbestos Litig.*, 798 F.Supp. 925 & 798 F.Supp. 940 (E. & S.D.N.Y.1992). Crane contends, *inter alia*, that the district court erred by admitting evidence that Crane placed warnings on its product after decedent's last exposure. We agree, and accordingly, reverse and remand for a new trial.

### BACKGROUND

Martin McPadden and his wife Anne filed this diversity action for personal injuries he suffered from exposure to asbestos. Mr. McPadden then died. The complaint was amended to substitute Mrs. McPadden as executrix and to add a claim for wrongful death. Crane was one of 18 companies named as co-defendants. Co-defendant Owens–Corning Fiberglas ("OCF") impleaded six other companies.

In March 1991, the district court consolidated over 600 lawsuits where each victim alleged some exposure at one or more of over 40 power-generating stations in New York State. Trial of the first 48 of these 600 cases began on April 1, 1991. Although OCF had impleaded Crane as a third-party defendant in five cases, *McPadden* was the only lawsuit where Crane was a direct defendant. Thirteen days before the trial was to begin, the district court permitted OCF to implead over 200 companies—generally other manufacturers, site owners, and contractors.

The 48 cases were tried on a reverse bifurcated basis, i.e., the jury first determined whether each plaintiff had an asbestos-related disease and the amount of his damages, and then determined which defendants were liable to each plaintiff. In the first phase, Martin McPadden testified that beginning in 1957, while serving in the Navy aboard the *U.S.S. Willis A. Lee,* he worked as a fireman striker and later as a machinist's mate. Everything in the engine room was covered in insulation that contained asbestos. Among the insulation identified was Crane's encapsulated asbestos valve packing—a sealing product used to control or stop leakage from coming up through the shaft of a valve.

McPadden later worked for Consolidated Edison from 1962 to 1968, first at the Astoria and then at the Ravenswood Powerhouses. McPadden testified that he used Crane valve packing at Ravenswood. He worked at the General Motors Building for a year in 1968–69, at the Exxon Building from 1969–72, and then at Orbach's in the A & S Plaza (on Woodhaven Boulevard, Queens) until 1973. At these sites, he was again exposed to other asbestos products—but not Crane's.

The first phase of the trial resulted in plaintiffs' verdicts in 45 of the 48 cases. The jury found that the McPadden family had suffered $5,917,781.85 in total damages, itemized as follows:

| *Type* | *Jury Award* |
| --- | --- |
| Past lost income | $ 565,981.85 |
| Consortium/economic | 127,300.00 |
| Consortium/non-economic | 400,000.00 |
| Past pecuniary loss | 17,500.00 |
| Future pecuniary loss | 294,000.00 |
| Funeral expenses | 4,500.00 |
| Lost services | 8,500.00 |
| Pain and suffering | 4,500,000.00 |

The liability phase of the 48 cases began a few weeks later before the same jury. During this trial, most of the cases settled; and McPadden settled with 16 of the defendants for $1,589,000.00. After all the settlements, only two defendants—Crane in *McPadden* and Keene in *Malcolm v. National Gypsum Co.* (decision filed herewith)— 995 F.2d 346 remained for the jury to render a liability verdict.

During the liability trial, McPadden read to the jury the deposition testimony of Vance Vorhees, a former Crane executive vice president. The following excerpt from Vorhees's 1983 deposition was read to the jury over Crane's objection:

Q. Has Crane ever placed any warnings on any other asbestos-containing products—

A. Yes.

Q. —regarding health hazards of asbestos?

A. Yes.

Q. When was the first warning placed on a product or packaging?

A. About two years ago.

After a six-month trial, the jury reached a liability verdict, finding Crane 10% responsible for McPadden's death. Crane then filed written submissions on the molding of the verdict as well as a motion for omnibus post-trial relief. In two decisions dated July 28, 1992, the district court denied these motions. In particular, the district court rejected Crane's argument that the court violated Fed.R.Evid. 407 by admitting evidence of subsequent remedial measures, *viz.,* the warning labels Crane began to use in the early 1980's. Molding the verdict in accordance with various New York statutes to reflect different degrees of fault among defendants and to add interest to the award, the district court then entered a judgment for McPadden against Crane for $1,562,-725.40, plus post-verdict, prejudgment interest.

## DISCUSSION

■ Crane marshals a parade of attacks on both the liability and the damages verdicts. We find it necessary to focus on only one evidentiary error that seriously prejudiced the liability verdict. The district court erred in admitting evidence that Crane placed warnings on its asbestos product after decedent's last exposure. The warnings were subsequent remedial measures and, as such, inadmissible under Fed.R.Evid. 407.

Rule 407 excludes evidence of subsequent remedial measures "to prove negligence or culpable conduct." Fed.R.Evid. 407 (rev. ed. 1991). Such measures, however, are admissible "for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment." *Id.* We have previously held that Rule 407 applies in all products liability actions, whether founded on negligence or strict liability in tort. *See Fish v. Georgia-Pacific Corp.,* 779 F.2d 836, 839–40 (2d Cir. 1985) (strict liability); *Cann v. Ford Motor Co.,* 658 F.2d 54, 60 (2d Cir.1981) ("The failure of Rule 407 to refer explicitly to actions in strict liability does not prevent its application to such actions."), *cert. denied,* 456 U.S. 960, 102 S.Ct. 2036, 72 L.Ed.2d 484 (1982); *Smyth v. Upjohn Co.,* 529 F.2d 803, 803–04 (2d Cir.1975) (per curiam) (negligence). *Accord Werner v. Upjohn Co.,* 628 F.2d 848, 856–58 (4th Cir.1980) (subsequent revised warnings of drug's side effects were not admissible under either negligence or strict products liability principles), *cert. denied,* 449 U.S. 1080, 101 S.Ct. 862, 66 L.Ed.2d 804 (1981).

In denying Crane's post-trial motion, the district court concluded that "plaintiff's use of the label evidence focused on the statement that no warning labels were placed on the products at the time of McPadden's exposure, not that the labels were placed on the products later because Crane recognized the danger." 798 F.Supp. at 934. McPadden contends that this distinction salvages the evidence because Rule 407 permits the admission of subsequent warnings to prove feasibility. We are not persuaded.

"Feasibility" is not an open sesame whose mere invocation parts Rule 407 and ushers in evidence of subsequent repairs and remedies. To read it that casually will cause the exception to engulf the rule. *See* 23 Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5288 (1980). Rule 407 states that a defendant must first contest the feasibility of a warning before the subsequent warning would become admissible. Fed.R.Evid. 407 advisory committee's notes (1972 Proposed Rules) ("The requirement

that the other purpose be controverted calls for automatic exclusion unless a genuine issue be present and allows the opposing party to lay the groundwork for exclusion by making an admission."); *see also Werner,* 628 F.2d at 853. The record is clear that Crane at no point argued that it was unable to issue a warning. Instead, it vigorously denied that its product required a warning or was defective without a warning. Because our review of the record convinces us that feasibility was not a contested issue, it was error to permit McPadden to read into evidence Vorhees's deposition testimony concerning post-exposure warnings that were placed on the product more than 12 years after McPadden was last exposed to Crane's asbestos products.

The admission of post-accident corrective measures is a prejudicial error and has been found to require a new trial in other cases. *See, e.g., Fish,* 779 F.2d at 840; *Gauthier v. AMF, Inc.,* 788 F.2d 634, 638 (9th Cir.1986); *Werner,* 628 F.2d at 860. This case is unique in that the jury verdict on damages preceded the liability trial where the error occurred. While we recognize "error with respect to one issue will ordinarily not constitute reason to retry an issue that was separately determined," *Crane v. Consolidated Rail Corp.,* 731 F.2d 1042, 1050 (2d Cir.), *cert. denied,* 469 U.S. 854, 105 S.Ct. 179, 83 L.Ed.2d 114 (1984), "a partial new trial 'may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice.'" *Bohack Corp. v. Iowa Beef Processors, Inc.,* 715 F.2d 703, 709 (2d Cir.1983) (quoting *Gasoline Products Co. v. Champlin Co.,* 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931)), *quoted in Brooks v. Brattleboro Memorial Hosp.,* 958 F.2d 525, 530 (2d Cir.1992). Here, the same jury heard the liability and damage phases of the trial, making partial reversal more problematic than it would be if separate juries had been impaneled. In the exercise of discretion, therefore, we conclude that a whole new trial on all issues, including damages, is the appropriate remedy.

Accordingly, we reverse and remand for a new trial on all issues.