Dean GARRETT and Lyone Garrett, Plaintiffs–Appellants,

v.

HAMILTON STANDARD CONTROLS, INC., et al., Defendants–Appellees.

No. 87–1866
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

July 28, 1988.

Rick Russwurm, Dumas, Tex., for plaintiff-appellents.

Michael H. Loftin, Underwood, Wilson, Berry, Stein & Johnson, Amarillo, Tex., for defendants-appellees.

Before GEE, GARWOOD and JONES, Circuit Judges.

GARWOOD, Circuit Judge:

Appellants Dean and Lyone Garrett (the Garretts) brought this products liability action against the sellers and manufacturers of an electric blanket that allegedly started a fire that destroyed their house. Following a two-day jury trial, the district court entered judgment on the jury's finding that the blanket was not defective or unfit for its intended purposes. The Garretts appeal, complaining of the district court's refusal to submit to the jury their proffered negligent manufacturing issue and related *res ipsa loquitur* instruction. We affirm.

### Facts and Proceedings Below

On the evening of December 29, 1983, the Garretts were alone in their house near Stinnett, Texas, in the Texas panhandle. As was his habit, Mr. Garrett spent the evening watching television while sitting on a velour love seat in the den. During cold weather he kept an electric blanket spread over the cushions, back, and arm of the love seat. He generally maintained the temperature control of the blanket at a medium setting. This particular electric blanket, which the Garretts had purchased from J.C. Penney, had been on the love seat for approximately three months, had been washed once or twice during that time, and had not given the Garretts any problems. The Garretts kept several electric blankets and did not know how long they had had this particular blanket, but described it as "an older blanket." It had "maybe" been used the previous winter. Before that it had been stored and hadn't been used "for a while." In approximately September 1983, it was taken off a bed in a spare bedroom, which was slept in only on rare occasions when there were guests (usually at Christmas), and put on the love seat. Normally the electric blankets "would simply stop heating" after one winter's use on the love seat.

That night Mrs. Garrett went to bed prior to Mr. Garrett, who habitually turned the blanket off before going to sleep but could not remember specifically doing so that evening. At 12:46 a.m., Mr. Garrett woke up coughing and noticed smoke in the room. He investigated, found the center of the love seat burning, and unsuccessfully attempted to extinguish the fire. He and Mrs. Garrett escaped from the house, but he suffered several burns, which did not require him to be hospitalized. The house and its contents were destroyed. A small portion of the electric blanket was recov-

ered along with six thermostats that were sewn into the blanket to control its temperature.

On December 27, 1985, the Garretts filed this negligence and strict liability action in Texas state court, naming Hamilton Standard Controls, Inc. (Hamilton), United Technologies/Essex Group, Essex, Inc., and J.C. Penney Co. (J.C. Penney) as defendants. The Garretts alleged that they purchased the blanket from J.C. Penney and that the other defendants manufactured the blanket or its components. The defendants removed the case to the United States District Court for the Northern District of Texas on the basis of diversity of citizenship. The Garretts subsequently amended their complaint to add a count of breach of implied warranty of merchantability.

In October 1987, the case was tried to a jury. In addition to eyewitness and damages testimony, the Garretts presented an expert witness who testified that the electric blanket caused the fire. He theorized that heat entrapment—an increase in the temperature of an area of the blanket that is isolated from its controlling thermostat by folding or bunching of the blanket—caused the blanket to ignite. He believed that this had to be the cause of the fire because the Garretts did not smoke and no other ignition sources were near the center of the love seat.[1] The uncontroverted evidence established that Hamilton was a division of Essex Group, Inc., (Essex) both of which are wholly-owned subsidiaries of United Technologies Corp., and that Hamilton manufactured electric blankets.

The jury found that Essex manufactured the blanket and that J.C. Penney sold it to the Garretts. The jury further found that the blanket was not unfit for its intended purposes (no breach of warranty) and was not defective at the time it left the possession of Essex (no strict liability). These were the only liability theories submitted. The district court entered judgment on the

verdict for defendants and this appeal followed.

### Discussion

The Garretts' sole complaint on appeal is that the district court refused to submit the following requested negligence issue and related *res ipsa loquitur* instruction:

"Was Essex Group, Inc., negligent on the occurrence in question with respect to the manufacturing of the electric blanket?

". . . .

". . . You are instructed that you may infer negligence by a party but are not compelled to do so. If you find that the character of the incident is such that it would not ordinarily—that it would ordinarily not happen in the absence of negligence, and if you find that the instrumentality causing the incident was under the management and control of the party at the time the negligence, if any, causing the incident probably occurred—causing the incident to occur, excuse me.

"And we would also request the same issue and the same instruction with respect to J.C. Penney, Inc., and that's the only objection we have."[2]

Although the district court did not give its reasons for refusing to so charge the jury, it no doubt sought to avoid confusing the jury with overlapping theories.

It is well-established that in a diversity action such as this we look to Texas law when reviewing the substance of the jury instructions and federal law when we are dealing with the form and manner of giving the instructions and whether an instructional deficiency requires reversal. *See Turlington v. Phillips Petroleum Co.*, 795 F.2d 434, 439, 441 (5th Cir.1986). Here, Texas law clearly allows the plaintiffs to bring their products liability action under three theories of recovery: (1) strict liability, (2) breach of warranty, and (3) negligence. *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 423 (Tex.1984).

---

1. The closest electric outlets were at either end of the love seat and the evidence did not indicate any electric wiring near the center of the love seat other than the electric blanket.

2. This is the *res ipsa loquitur* charge approved in *Mobil Chemical Co. v. Bell*, 517 S.W.2d 245, 257 (Tex.1975).

*See also Syrie v. Knoll Intern.,* 748 F.2d 304, 306 (5th Cir.1984) (pleading strict liability and negligence as alternative theories is customary and proper). However, the district court's failure to submit a negligence issue with a related *res ipsa loquitur* charge was, if error, harmless error under Fed.R.Civ.P. 61.[3]

■ The Garretts do not clearly state whether they are appealing the district court's failure to submit a negligent manufacturing issue for both J.C. Penney and Essex. In their brief they refer to the district court's failure to submit the requested "issues," and thus seem to be appealing both. The jury, however, found that Essex, not J.C. Penney, manufactured the blanket. The Garretts do not appeal this finding. Thus, the district court's failure to submit the requested issue asking whether J.C. Penney negligently manufactured the blanket was clearly harmless.

■ With respect to the district court's refusal to submit an interrogatory asking whether Essex negligently manufactured the blanket, the issue is whether the jury's rejection of liability based on strict liability and breach of warranty pretermits a possible finding of negligence. Although the Texas courts do not seem to have directly addressed this issue, we did in *Sprankle v. Bower Ammonia and Chemical Co.,* 824 F.2d 409, 413–14 (5th Cir.1987), a case brought under Mississippi substantive law. We held that the district court's omission of a negligent failure to warn charge and interrogatory was harmless because the jury rejected a strict liability, failure to warn theory. We reasoned as follows: (1) to find against plaintiff on strict liability, the jury had to find either no defect or that the defect did not proximately cause injury, (2) that defect and proximate cause are necessary elements in a negligence claim, and, therefore, (3) that the jury's rejection of the strict liability claim necessarily constituted a rejection of at least one essential element of the negligence claim.[4]

The same result is required here. The jury found that "the electric blanket" was not "unfit for the ordinary purposes for which such blankets were used." The jury also separately found that "the electric blanket" was not "defective." They were correctly instructed, without objection, that "a product is defective if it is 'an unreasonably dangerous' product" and that " 'an unreasonably dangerous' product is one that is dangerous to an extent beyond that which would be contemplated by the ordinary user of the product, with the ordinary knowledge common to the community as to the product's characteristics." [5] *See Syrie,* 748 F.2d at 306. Negligence, on the other hand, "looks at the act of the manufacturer and determines if it exercised ordinary care." *Id.* at 307 (quoting *Rourke v. Garza,* 530 S.W.2d 794, 800 (Tex.1975)). Under both negligence and strict liability theories the plaintiff must, of course, prove

---

3. Fed.R.Civ.P. 61 provides:

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

4. In Texas, the standard of care is the same in failure to warn cases brought under negligence and strict liability theories. *Borel v. Fibreboard Paper Products Corp.,* 493 F.2d 1076, 1089 (5th Cir.1973), *cert. denied,* 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974). We noted in *Spran-*

*kle* that courts "differ in the extent to which they find conceptual differences in failure to warn cases brought under" these theories, but concluded that the courts that recognize a distinction also recognize that "while a greater showing (*i.e.,* the additional proof of negligence) may be required of a plaintiff suing under a negligent failure to warn theory than one suing under strict products liability theory, in no event is 'less' required." *Sprankle,* 824 F.2d at 413–14 n. 5. The reasoning of *Sprankle* is thus equally applicable in a products liability case where the alleged defect is a manufacturing defect and not the warning.

5. The Garretts did not request the additional risk-utility instruction for design defects. *See Syrie,* 748 F.2d at 306–07 (discussing *Turner v. General Motors Corp.,* 584 S.W.2d 844 (Tex. 1979)).

causation. *Id.* at 306–07. Thus, although a negligence claim requires a different showing from a strict liability claim, a manufacturer logically cannot be held liable for failing to exercise ordinary care when producing a product that is not defective because: (1) if a product is not unreasonably dangerous because of the way it was manufactured, it was not negligent to manufacture it that way and (2) even if the manufacturer was somehow negligent in the design or production of the product, that negligence cannot have caused [6] the plaintiff's injury because the negligence did not render the product "unreasonably dangerous."[7] Thus, as in *Sprankle,* the jury's

rejection of strict liability precludes a negligence claim.[8] We emphasize, however, that the issue here is solely whether a defective product theory subsumes a negligent manufacturing theory, and we do not address the effect of additional negligence theories, such as failure to warn, in instances where (unlike the situation in *Sprankle*) that is not encompassed by the strict liability theory submitted.

Moreover, the proof in this case was directed entirely to the issue of whether the product was unreasonably dangerous. The Garretts presented the testimony of an expert witness who argued that the blanket was defective because it could ignite due to

**6.** In a strict liability case in Texas, the plaintiff must prove that the defect was a "producing cause" of his injury. *See Rourke v. Garza,* 530 S.W.2d 794, 801 (Tex.1975). The difference between producing and proximate cause, which is required in a negligence action, is the absence of the foreseeability requirement in producing cause. *See Reyes v. Wyeth Labs, Inc.,* 498 F.2d 1264, 1280 (5th Cir.), *cert. denied,* 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974). Thus, the plaintiff bears a less demanding causation burden in strict liability cases.

**7.** In *Syrie* we concluded that under Texas law it was error for the district court to refuse to submit a negligence issue that was sufficiently justified by the evidence when the same grounds had been submitted under a strict liability theory. Having found error, we remanded to the district court to determine if the error was harmless. 748 F.2d at 310. The district court subsequently reentered judgment for the defendant and we affirmed in an unpublished opinion. *Syrie v. Knoll Intern.,* 792 F.2d 1119 (5th Cir.1986) (per curiam). We now reach the issue left open in *Syrie.* We note that we did not then purport to establish a rule requiring remand to the district court for initial consideration of whether an error is harmless, and we would not have done so because under Rule 61 "we are bound to disregard any technical errors or defects which do not affect the substantial rights of the parties." *Bell v. Swift & Co.,* 283 F.2d 407, 409 (1960). In *Syrie,* however, we had to interpret a general verdict and evidence relevant to negligence had been excluded. Here we face no such difficulties.

**8.** *Accord Wagner v. International Harvester Co.,* 611 F.2d 224, 229 (8th Cir.1979) (applying Minnesota law); *Greenland v. Ford Motor Co.,* 115 N.H. 564, 347 A.2d 159, 162–64 (1975); *Masi v. R.A. Jones Co.,* 163 N.J.Super. 292, 394 A.2d 888, 889–91 (Ct.App.Div.1978); *Dorminey v. Harvill Machine, Inc.,* 141 Ga.App. 507, 233 S.E.2d 815, 816–17 (1977). There is little authority to the contrary. The *Restatement (Sec-*

*ond) of Torts* § 402A, comment a, states that strict liability does not preclude liability on the alternative ground of negligence, but does not address whether there can be negligence liability when a fact finder has rejected strict liability in a context where that necessarily requires rejection of at least one essential element of the negligence claim. *See also Ilosky v. Michelin Tire Corp.,* 307 S.E.2d 603, 613 (W.Va.1983) (not error to allow strict liability and negligence theories to go to the jury). Wisconsin, *see Hansen v. Cessna Aircraft Co.,* 578 F.2d 679, 682–85 (7th Cir.1978), and North Dakota, *see Randall v. Warnaco, Inc.,* 677 F.2d 1226, 1229–33 (8th Cir. 1982), however, appear to require both theories to go to the jury when there is supporting evidence. Although these cases broadly state this rule, they are not persuasive authority here. *Hansen* involved duty to test and warn theories that were not encompassed by the strict liability charge submitted to the jury. *See also Jiminez v. Sears Roebuck & Co.,* 4 Cal.3d 379, 93 Cal. Rptr. 769, 772–73, 482 P.2d 681, 684–85 (1971). *Randall* appears to be on point, but we simply disagree with its reasoning. The court thought that the jury might have found that a tent that caught fire was not defective because the plaintiffs modified it, but that the modification might not have affected a negligence recovery. The alleged defect, however, was the tent's flammability, which was not affected by the modification (cutting a hole in the tent for a stove). As causation is at least as difficult to prove in negligence actions as in strict liability actions, causation cannot explain the possible prejudice in failing to submit negligence. *Randall* does not explain on what basis the jury could have found that the flammable character of the tent did not render it defective even though the manufacturer was negligent for making the tent flammable. The only basis for such a holding would be a narrower definition of "defective" for strict liability purposes than that applied here or under Texas strict products liability generally.

heat entrapment under the right conditions. He rendered no opinion with respect to the adequacy of the warnings, about which there was no evidence; the design of the blanket, which he was unable to ascertain; or the manufacturing process. Thus, this case is indistinguishable from *Foster v. Ford Motor Company*, 621 F.2d 715 (5th Cir.1980), which supports the district court's decision.

In *Foster*, the plaintiffs brought a products liability action under theories of strict liability, negligence, and breach of warranty. The evidence at trial focused exclusively on whether the product was "unreasonably dangerous." No evidence was offered concerning the manufacturer's conduct in designing or producing the product. The district court refused to submit a negligence issue to the jury. Relying on the rule that the district court does not have to instruct the jury on a legal theory unless there is sufficient evidence to justify the proffered instruction, we held that the district court had not committed reversible error. *Id.* at 717–19. Subsequently, in *Syrie* we read *Foster* to mean that in cases where strict liability and negligence have been pleaded, "[o]nly when the plaintiff has failed to submit sufficient evidence concerning the manufacturer's conduct in designing, manufacturing, or marketing a product should the court refuse to instruct the jury [on negligence]." 748 F.2d at 309. That requirement is met here.

■ Finally, plaintiffs' requested *res ipsa loquitur* instruction does not affect our analysis of this case. This requested instruction, by its own terms, related *only* to negligence and it was requested as a part of the request for submission of a special issue on negligence in manufacturing. Hence the failure to give the instruction cannot be harmful error if, as we have concluded, it was not harmful error to fail to submit the requested special issue, which was the only issue the instruction pertained to.

Not only did the wording of the requested instruction relate only to negligence, but that is what *res ipsa* is concerned with

under Texas law. The Texas Supreme Court has recently stated:

> "*Res ipsa loquitur* means simply that the nature of the occurrence itself furnishes circumstantial evidence of negligence.... [R]es ipsa loquitur* is applicable when two factors are present: (1) the character of the accident is such that it would not ordinarily occur in the absence of negligence, and (2) the instrumentality causing the injury is shown to have been under the management and control of the defendant." *Porterfield v. Brinegar*, 719 S.W.2d 558, 559 (Tex. 1986).

The availability of strict liability has largely alleviated the need to proceed under a *res ipsa loquitur* theory, *see generally* W. Page Keeton, *Prosser and Keeton on Law of Torts* § 99 (5th ed.1984) (hereinafter *Prosser and Keeton*), prompting the Texas Supreme Court to conclude that "there would seem to be little, if any, advantage to plaintiffs ... to continue to plead and submit their cases on res ipsa loquitur." *Pittsburg Coca–Cola Bottling Works v. Ponder*, 443 S.W.2d 546, 551 (Tex.1969). *Res ipsa loquitur* simply relieves the plaintiff of having to prove a specific act of negligence and allows the jury to determine whether plaintiff has proved negligence by a preponderance of the evidence, usually circumstantial evidence. *Jones v. Tarrant Utility Co.*, 638 S.W.2d 862, 865 (Tex.1982); *Mobil*, 517 S.W.2d at 251–52. This case did go to the jury, albeit on a strict liability theory, and, as we have discussed, the jury's finding that "the electric blanket" was not "defective" precludes a negligence finding. *See Curry v. Chevron, USA*, 779 F.2d 272, 275 (5th Cir.1985) ("We are hard pressed to discern how the use of res ipsa can help the plaintiffs when they are struggling even under a strict liability theory, which is much less onerous to prove, to make their case.").

And assuming that the Garretts' requested *res ipsa loquitur* instruction was intended to be relevant on strict liability, the district court's charge was adequate.

"The difficult questions [in strict liability cases] are those of circumstantial evidence and inferences from the facts. There is no indication that these are to be dealt with in any different manner from the negligence cases. *Res Ipsa Loquitur* is not an applicable principle when there is no question of inferring any negligence; but the inferences from circumstantial evidence which are the core of the doctrine are no less applicable to strict liability." *Coca Cola Bottling Co. of Houston v. Hobart,* 423 S.W.2d 118, 124 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.).

*See generally* Prosser, *Handbook of the Law of Torts* § 103, at 672 (4th ed. 1971).[9] Here, the jury was not instructed that the Garretts had to prove or that the jury had to find a specific defect and they were told that when determining liability they could consider circumstantial evidence, and reasonable common sense inferences arising therefrom, and expert testimony. The strict liability issue did not ask if there were one or more defects in the blanket, but whether "the electric blanket" was "defective."[10] The accompanying definition of "defective" related only to "the product" and whether it was unreasonably dangerous, not to whether it possessed one or more particular defects or dangerous characteristics. The parties did not object to these instructions or issues and they sufficiently apprised the jury of the nature of the Garretts' burden and the evidence that they could consider. *See Rehler v. Beech Aircraft Corp.,* 777 F.2d 1072, 1078, 1082–83 (5th Cir.1985).

**9.** The editors of the fifth edition of Professor Prosser's hornbook did not retain this language. Their discussion of *res ipsa loquitur* is entirely consistent with the earlier edition on this point, however. *See Prosser and Keeton* § 99.

**10.** Similarly, the implied warranty issue inquired whether "the electric blanket was unfit," and not whether there was some particular thing or characteristic about it that rendered it unfit.

**11.** Appellees also argue that the management and control on their part necessary for *res ipsa* was not shown. We do not reach this issue. We note the absence of direct proof that the fire started in the blanket, that the Garretts had

**Conclusion**

We hold that the jury's rejection of the Garretts' strict liability theory renders harmless any error, if any, in the district court's failure to submit their proffered negligence issue and related *res ipsa* instruction.[11] Accordingly, the judgment of the district court is

AFFIRMED.

owned and used this blanket for a considerable time, and that fires may start at or near and burn such a blanket without being caused by anything negligent in its manufacture. *See Querry v. Montgomery Ward & Company, Inc.,* 535 P.2d 928 (Kan.1975). We also note that under *Porterfield* a *res ipsa* negligence inference may arise against a healthy driver where a car leaves a dry road without explanation. This suggests that fault may be inferred as to those in control at the time of the accident. It also inferentially casts doubt on the propriety of applying *res ipsa* against the car's manufacturer in that instance. *Cf. Marathon Oil Co. v. Sterner,* 632 S.W.2d 571, 574 (Tex.1982).