**Harold NOBLES, Plaintiff,**

v.

**SOFAMOR, S.N.C., Defendant.**

**No. CIV. A. H–98–2176.**

United States District Court, S.D. Texas, Houston Division.

June 30, 1999.

Harold Nobles, Beaumont, TX, pro se.

John K. Spiller, Strasburger & Price, Houston, TX, William A. Worthington, Starsburger & Price, Houston, TX, for Sofamor SNC.

Alex E. Cosculleuela, Adams and Reese, Houston, TX, for Insurance Company of Pennsylvania.

## MEMORANDUM AND OPINION

ROSENTHAL, District Judge.

Pending before this court is a motion for summary judgment filed by the defendant, Sofamor, S.N.C. (Docket Entry No. 23). Plaintiff, Harold Nobles, has not responded. Plaintiff, who was previously represented by counsel, has been *pro se* since December 18, 1998. His counsel moved to withdraw on September 9, 1998. This court stayed Sofamor's discovery until January 29, 1999, and set deadlines that permitted ample time for plaintiff to obtain new counsel and prepare this case. The file reflects that plaintiff has not retained new counsel and has taken no steps to proceed with his suit. This court therefore proceeds to decide the pending dispositive motion.

Based on the pleadings, the motion, the record, and the applicable law, this court GRANTS the motion for summary judgment. The reasons are set out below.

## I. Background

Harold Nobles alleges that a medical device used in his 1992 spinal fusion surgery caused him disabling pain. The defendant, Sofamor, is the manufacturer of the Cotrel Dubousset spinal instrumentation device at issue. The so-called CD system is a form of orthopedic bone screw used as an internal split to immobilize the spine following fusion surgery. (Docket Entry No. 23, pp. 1–2). A number of similar product liability lawsuits were filed, leading to a transfer under the multi-district litigation statute. This case has been returned to this court after discovery on, and resolution of, issues common to the cases in the MDL transferee court.

The summary judgment record includes Nobles' deposition testimony; the testimony of Dr. Jeff Kozak, the orthopedic surgeon who performed the fusion surgery and installed the orthopedic screws; and the report of the expert medical witness Nobles designated, Dr. James Woessner. The relevant facts are largely undisputed.

Nobles was 43 years old at the time of surgery. His work had involved moving heavy equipment. He injured his back and was disabled from working before any back surgery. (Docket Entry No. 23, Ex. A, Deposition of Nobles, pp. 24–25). Dr. Kozak diagnosed herniated discs at L4–5 and L5–S1. After medical treatment failed to relieve Nobles' back pain, Dr. Kozak recommended a two-level fusion with spinal instrumentation for internal fixation. Before the surgery, Dr. Kozak and Nobles discussed the procedure. Nobles received a second opinion before Dr. Kozak performed the surgery. (*Id.*, pp. 40–41).

A few months after the surgery, Nobles began feeling pain in his lower buttocks. This was a new pain, in a new place, different from what he had experienced before the surgery. After tests, Dr. Kozak concluded that Nobles' pain complaints did not originate from his spine, but from his sacroiliac joint, which was not involved in the surgery of September 1992. (Docket Entry No. 23, Ex. B, Deposition of Kozak, pp. 59–60). Different treatments, including the placement of a stimulation apparatus, failed to give lasting relief.

Dr. Kozak also evaluated the spinal fusion with a myelogram and CT scan. He concluded that the fusion had successfully

removed the discs and established stability in the spine. The screws were in their proper place and showed no deformation or other problem. Dr. Kozak concluded that Nobles' original back pain was resolved and that the new pain was unrelated to the back surgery or to the use of the pedicle screws. (*Id*, pp. 55–56).

The record evidence supporting Nobles' claims includes the report of his expert witness, Dr. James Woessner. Dr. Woessner reviewed some medical records; he did not examine Nobles. He concluded that "[t]here is a reasonable degree of medical certainty that the instrumentation not only did not correct the pathology that caused the original pain and disability, but also that the whole process of putting the instrumentation into his back has also resulted in much tissue disruption and scarring in his back. Any remaining hardware, the abundant resultant scar tissue and the dorsal column stimulator apparatus are very likely rubbing against nerve endings in many tissues in the area of the original injury and these subsequent surgical procedures, and are therefore, understandably causing nerve impingement, and thus, pain and dysfunction.... This case is an example of failure of non-FDA approved hardware." (Docket Entry No. 23, Ex. C, p. 5).

The date of Dr. Woessner's report is January 25, 1998. On July 27, 1998, the FDA issued a final rule on the pedicle screw spinal systems. *See* Orthopedic Devices: Classification and Reclassification of Pedicle Screw Spinal Systems, 63 Fed. Reg. 40025 (1998). That report, made a part of the summary judgment record, contains language noting that the devices do not result in a greater increase in adverse outcomes than is associated with other types of spinal fusion procedures. (Docket Entry No. 23, Ex. D).

In this lawsuit, Nobles alleged fraud, negligent misrepresentation, negligence, strict liability, and breach of implied warranties. In this motion, Sofamor moves for summary judgment on the grounds that Nobles has failed to raise a fact issue that would permit a finding of liability on any of the causes of action he alleged.

## II. The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. Substantive law identifies the facts that are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute over a material fact is genuine only if the evidence in the summary judgment record suffices for a reasonable fact-finder to return a verdict in favor of the nonmoving party. *Id.* The inquiry at the summary judgment stage of litigation is whether the evidence disclosed in the summary judgment record presents a sufficient disagreement to require submission to the factfinder or whether it is so one-sided that the moving party must prevail as a matter of law. *Id.* at 251–52, 106 S.Ct. 2505.

Under FED. R. CIV. P. 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir.1994). The operation of the summary judgment standard depends on which party bears the burden of proof at trial. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. If, as here, the defendant is moving for summary judgment and is not the party with the burden of proof at trial, then the defendant must affirmatively offer evidence that undermines one or more of the essential elements of the plaintiff's case, or must demonstrate that the evidence in the summary judgment record falls short of establishing an essential element of the plaintiff's case. If the defendant does so, then the plaintiff, as the nonmoving party, must point to evidence in the summary judgment record sufficient

for· a reasonable fact finder to decide in her favor. A scintilla of evidence, conclusory allegations, speculation, and unsubstantiated assertions will not carry this burden. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir.1996)(en banc); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. *Little*, 37 F.3d at 1075. When the moving party has met its Rule 56(c) burden, the nonmovant cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.1995). The nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Little*, 37 F.3d at 1075 (citing *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548). In deciding a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Little*, 37 F.3d at 1075 (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548).

### III.  Analysis

#### A.  The Strict Liability Claim

Texas has adopted the strict products liability standard set forth in section 402A of the *Restatement (Second) of Torts*, which provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller. ·

RESTATEMENT (SECOND) OF TORTS § 402A; *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334–35 (Tex.1998).

Nobles has the burden of showing that the product was defective and unreasonably dangerous and that the dangerous condition was a producing cause of his injury. "The first prong of this test may be satisfied by evidence of a defect in the [products'] manufacture, design, or marketing." *Oser v. Wal–Mart Stores, Inc.*, 951 F.Supp. 115, 118 (S.D.Tex.1996) (citing *Lucas v. Texas Indus., Inc.*, 696 S.W.2d 372, 377 (Tex.1984)). "A defectively designed product is one that is unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use." *Dico Tire, Inc. v. Cisneros*, 953 S.W.2d 776, 783 (Tex.App.—Corpus Christi 1997, writ denied) (citing *Turner v. General Motors Corp.*, 584 S.W.2d 844, 847 n. 1, 851 (Tex.1979)). "Design defect cases are not based on consumer expectancy, but on the manufacturer's design of a product which makes it unreasonably dangerous, even though not flawed in its manufacture." *Id.* (citing *Ford Motor Co. v. Pool*, 688 S.W.2d 879, 881 (Tex.App.—Texarkana 1985), *aff'd in part on other grounds, rev'd in part on*

*other grounds,* 715 S.W.2d 629 (Tex.1986)). Design defect claims are evaluated in light of the economic and scientific feasibility of safer alternatives. *Uniroyal,* 977 S.W.2d at 335; *Dico Tire,* 953 S.W.2d at 783 (citing *Caterpillar Inc. v. Shears,* 911 S.W.2d 379, 383–84 (Tex.1995)).

In a manufacturing defect case, "the plaintiff must show a manufacturing flaw which renders the product unreasonably dangerous; that the defect existed at the time the product left the seller, and that the defect was the producing cause of the plaintiff's injuries." *Dico Tire,* 953 S.W.2d at 783 (citing *Pool,* 688 S.W.2d at 881; *Fitzgerald Marine Sales v. LeUnes,* 659 S.W.2d 917, 918 (Tex.App.-Ft. Worth 1983, writ dism'd)); *see also Uniroyal Goodrich Tire Co. v. Martinez,* 928 S.W.2d 64, 69 (Tex.App.—San Antonio 1995) (citing *Restatement (Second) of Torts* § 402A (1965)), *aff'd,* 977 S.W.2d 328 (Tex.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1336, 143 L.Ed.2d 500 (1999). "[A] plaintiff has a manufacturing defect claim when a finished product deviates, in terms of its construction or quality, from the specifications or planned output in a manner that renders it unreasonably dangerous." *Robins v. Kroger Co.,* 982 S.W.2d 156, 160 (Tex. App.—Houston [1st Dist.] 1998, writ requested).

"The concept of defect is considered central to any products liability action, whether the alleged defect occurs in the design, manufacturing, and/or marketing of the product." *Rodriguez v. Hyundai Motor Co.,* 944 S.W.2d 757, 769 (Tex.App.—Corpus Christi 1997) (citing *Turner v. General Motors Corp.,* 584 S.W.2d 844, 847 (Tex. 1979)), *rev'd on other grounds, Hyundai Motor Co. v. Rodriguez,* 995 S.W.2d 661 (Tex.1999) (slip copy); *see also Patterson v. Gesellschaft,* 608 F.Supp. 1206, 1211 (N.D.Tex.1985) ("There can be no valid products liability claim without a product which has a defect.").

In moving for summary judgment, Sofamor has presented competent summary judgment evidence, including from a treating orthopedic surgeon whose qualifications and reliability are not challenged, that the device was properly designed, properly manufactured, was intact and properly positioned after surgery, and achieved the intended result. There is no controverting evidence in the record before this court of any design, manufacturing, or marketing defect.[1]

■ Dr. Kozak also presented competent summary judgment evidence that the instrumentation did not cause Nobles' post-surgical pain. He noted that the objective post-surgical studies showed the fusion procedure achieved the desired physical changes in the spine. Dr. Kozak concluded that the post-surgical pain resulted from other identifiable causes, unrelated to the back surgery in general and to the pedicle screws in particular. (Docket Entry No. 23, Ex. B, Deposition of Kozak, pp. 49–53, 55–58). The file contains the report of Dr. Woessner, filed by Nobles. Sofamor challenges Dr. Woessner's report under *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *see also Moore v. Ashland Chem. Inc.,* 151 F.3d 269 (5th Cir.1998) (en banc). Dr. Woessner is particularly vulnerable to challenge because in reaching a conclusion as to causation, he did not examine sufficient records or do sufficient analysis to exclude other causes for Nobles' post-surgery pain besides the pedicle screws. (Docket Entry No. 23; Ex. C). He did not review the MRI or other similar stud-

---

1. As Sofamor points out, Nobles did not proceed on a marketing defect theory. Sofamor pointed to the absence of any evidence in the summary judgment record of a defect in the information provided concerning the device. Sofamor also noted that Dr. Kozak testified as to his familiarity with the device and the risks attendant to its use. Finally, as Sofamor points out, Texas has recognized, if not widely adopted, the learned intermediary doctrine. *See Alm v. Aluminum Co. of Am.,* 717 S.W.2d 588 (Tex.1986). Nothing in the summary judgment record raises a fact issue as to a marketing defect that caused Nobles' injury.

ies. (*Id.*). He did not reveal the basis for his analysis or the ground for his conclusion. His report does not, in short, meet the overarching goal of *Daubert's* gatekeeping requirement—"to ensure the reliability and relevancy of expert testimony ... [and] to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 1175, 143 L.Ed.2d 238 (1999).

Dr. Woessner's opinion does not raise a fact issue as to causation sufficient to preclude summary judgment. As Sofamor points out, Dr. Woessner identifies other potential sources of Nobles' post-surgery pain, including scar tissue from the surgery itself and the dorsal column stimulator apparatus. He identifies potential causes of the pain besides the pedicle screws, but nonetheless concludes that the pain Nobles suffers is an "example of failure of non-FDA approved hardware." (Docket Entry No. 23, Ex. C, p. 5). There is simply no connection between his own identification of possible sources contributing to Nobles' pain and his final conclusion. Such testimony is neither reliable nor relevant.

The record discloses no fact issue as to the presence of an instrument defect that caused Nobles' injury. Sofamor's motion for summary judgment as to Nobles' strict liability claim is GRANTED.

## B. The Negligence Claim

■ "A negligence cause of action focuses on conduct, specifically the quality of the act causing the injury." *Lewis v. Timco, Inc.,* 716 F.2d 1425, 1434 (5th Cir.1983). In a negligence cause of action against a

manufacturer for injuries suffered as a result of the manufacturer's product, the plaintiff must establish that: (1) the manufacturer owed a legal duty to the plaintiff; (2) the manufacturer breached that duty; (3) the plaintiff suffered an injury as a result of the breach; and (4) the breach of duty was a proximate cause of the injury. *Mosley v. Excel Corp.,* 109 F.3d 1006, 1009 (5th Cir.1997); *see also Morris v. Adolph Coors Co.,* 735 S.W.2d 578, 584 (Tex. App.—Ft. Worth 1987, writ ref'd n.r.e.) (citing *Colvin v. Red Steel Co.,* 682 S.W.2d 243, 245 (Tex.1984)).

■ Nobles' negligence claims suffer from the same gaps as the strict liability claim, only more so. He has not raised a fact issue as to either a defective product or causation. In *Garrett v. Hamilton Standard Controls, Inc.,* 850 F.2d 253 (5th Cir.1988), the Fifth Circuit examined whether the rejection of liability based on strict liability and breach of warranty "pretermits a possible finding of negligence." *Id.* at 256. The Fifth Circuit stated that:

> although a negligence claim requires a different showing from a strict liability claim, a manufacturer logically cannot be held liable for failing to exercise ordinary care when producing a product that is not defective because: (1) if a product is not unreasonably dangerous because of the way it was manufactured, it was not negligent to manufacture it that way and (2) even if the manufacturer was somehow negligent in the design or production of the product, that negligence cannot have caused the plaintiff's injury because the negligence did not render the product "unreasonably dangerous." Thus ... the jury's rejection of strict liability precludes a negligence claim.

*Id.* at 257.[2] The Fifth Circuit noted that the *Restatement (Second) of Torts* § 402A,

---

**2.** The court distinguished *Syrie v. Knoll International,* 748 F.2d 304 (5th Cir.1984), which held that it was error for the district court to refuse to submit the negligence issue to the jury after finding that the product was not

unreasonably dangerous. In *Syrie,* the Fifth Circuit stated that strict liability and negligence are two "entirely separate theories of recovery in a products liability action," *id.* at 310, and that the plaintiffs had submitted

comment a, states that strict liability does not preclude liability for negligence, "but does not address whether there can be negligence liability when a fact finder has rejected strict liability in a context where that necessarily requires rejection of at least one essential element of the negligence claim." *Id.* at 247 n. 8. The court concluded that when the evidence was "directed entirely to the issue of whether the product was unreasonably dangerous" and the plaintiffs offered no evidence as to other potentially negligent conduct in designing or manufacturing the product, the absence of a defect negated an essential element of a negligence claim. *See also Sprankle v. Bower Ammonia & Chem. Co.,* 824 F.2d 409, 413 (5th Cir.1987) ("[T]he jury's rejection of [plaintiff's] strict liability theory *necessarily* also constitutes a rejection by the jury of at least one essential factual element of [plaintiff's] negligent failure to warn theory." (emphasis in original)).

Nobles alleges negligence *per se,* but Texas law does not recognize such a tort under the facts present here. *See, e.g., Johnson v. Sawyer,* 47 F.3d 716, 729 (5th Cir.1995); *Scott v. Butcher,* 906 S.W.2d 16, 20 (Tex.App.—Tyler 1994), *rev'd on other grounds,* 906 S.W.2d 14 (Tex.1995). Negligence *per se* does not preclude summary judgment dismissing Nobles' negligence claim.

## C. The Breach of Implied Warranty Claim

■ Nobles alleges breach of implied warranty of merchantability. "A plaintiff in an implied warranty of merchantability case must prove that the good complained of was defective at the time it left the manufacturer's or seller's possession." *Rodriguez v. Hyundai Motor Co.,* 944 S.W.2d 757, 771 (Tex.App.—Corpus Christi 1997) (citing *Plas–Tex, Inc. v. United States Steel Corp.,* 772 S.W.2d 442, 444–45 (Tex.1989)), *rev'd on other grounds,*

995 S.W.2d 661 (Tex.1999) (slip copy). This court has already found that Nobles has not presented competent summary judgment evidence to controvert Sofamor's evidence that the device was not defective. Nobles' breach of implied warranty claim fails as a matter of law. *Cf. Hyundai Motor Co.,* 995 S.W.2d at 667–68 ("We hold only that the jury should not be asked to consider the identical defect finding in response to questions relating to strict-liability and breach-of-implied-warranty claims.").

## D. Fraud

There is no basis in the record before this court to reverse the prior ruling dismissing the fraud on the FDA claims. There is no competent summary judgment evidence to raise a fact issue as to material misrepresentation under Texas law. Sofamor's motion for summary judgment dismissing the fraud claims is GRANTED.

## IV. Conclusion

Sofamor's motion for summary judgment is GRANTED. This case will be dismissed by separate order.

---

sufficient evidence concerning the manufacturer's conduct in designing and marketing the product. The court in *Garrett* stated that it "now reach[es] the issue left open in *Syrie,*"

and that in *Syrie,* "we had to interpret a general verdict and evidence relevant to negligence had been excluded. Here we face no such difficulties." *Id.* at 257 n. 7.